The opinion of the Court was delivered by
Tilghman C. J.
Mountford and Crozoley, the defendants in error, who were plaintiffs below, brought an action on the case, against Wilmarth and Schofield-, the plaintiffs in error> The declaration contained a count on an indebitatus assumpsit, and another on a quantum valebant, for goods sold and delivered. The pleas were non assumpsit and payment, ancl a set-off of anote for 574 dollars 93 cents, given by a 50 . J certain Frederick Reed to Wilmarth., one of the defendants. ■ On these pleas, issues were joined. On the trial of the cause, in the District Court, several questions of law were proposed by the counsel for the defendants, which were de« c’^et^ against them ; on which they excepted to the Court’s opinion.
1. The plaintiffs gave evidence of a sale and delivery of g°°ds by themselves to the defendants, on which the defen *125 dants’ counsel contended, that the action could not be maintained, because the plaintiffs, in their writ and declaration had styled themselves “ Assignees of Frederick Reed, in trust, for the use "of his creditors. The fact was, and it was so proved, that Frederick Reed had made an assignment of all his estate, real and personal, to the plaintiffs, in trust that they should sell the same, and pay the debts of such of his creditors as should execute a release to the said Reed, within sixty days from the date of the assignment. The goods which were sold to the defendants, having been delivered to the plaintiffs, in consequence of the assignment, the legal property was completely in them, and it was not only unnecessary, but improper, that they should be called assignees, &c. in the writ, and declaration. This, however, did not destroy their right of action, but was merely surplusage. It is like the case of executors, who sell the goods of their testator. In an action for the price of goods sold, if they name themselves executors, it is surplusage, and if they fail in the action, they are liable to costs. The District Court was right therefore, in deciding, that the action was maintainable.
2. The counsel for the defendants requested the Court to charge the jury, that the evidence did not prove an assumption by the two defendants, but by Schojield only. This the Court refused to do, but left it to the jury to decide whether the assumption was by one or both. The Court was certainly right. There was evidence which had a tendency to prove that both the defendants were concerned in the purchase of the plaintiffs’ goods, but it was not positive. Under these circumstances, the Court had no right to decide. It was a question of. fact for .the jury, and therefore very properly submitted to them.
3. Hilary Wentz was produced as a witness on the part of the plaintiffs, and sworn, without objection. After he had gone through his testimony, the counsel for the defendants alleged, that it appeared he was interested in the cause and therefore incompetent; and they prayed the Court to tell the jury, that they were to pay no regard to his evidence. But the Court was of opinion, that the witness was competent, Wentz was in the service of the plaintiffs, and sent by them with the goods to the tavern where the defen *126 dants boarded. He swore, that the orders of the plaintiffs were, that he should bring back the goods, unless the defendants paid the money ; but that the defendants got possession of the goods by stratagem, and then refused to pay for them, unless he would receive Frederick Reed’s note in payment. The supposed interest of Wentz, consists in his being subject to an action by the plaintiffs, for delivering the goods, contrary to order. But the defendants must not select part of Wentz’s testimony and reject the rest. Taking it altogether, he was not guilty of any breach of orders; for he did not voluntarily give possession of the goods to the defendants. They obtained them by artifice and without his consent. The plaintiffs, therefore, could support no action against him, and the objection to his competency falls to the ground.
4, The defendants contended for the right of setting off Frederick Reed’s note to Wilmarth, on the supposition that this action was brought for the use of Reed. They endeavour to prove that it was for his use, because there was no evidence that any of his creditors had executed releases within sixty days, and therefore that a trust resulted to him, for the whole estate conveyed by him to the plaintiffs. This is a very subtle kind of argument. It is assumed, contrary to the fact, that the action was brought for the use of Reed. Neither the plaintiffs nor Reed himself say, that the action was for his use. The express trust was, that the plaintiffs should sell Reed’s property, and convert it into money. The sale to the defendants was directly in execution of this trust, and even if nona of the creditors had released, the assignment directs, that the money shall be applied, in the first place, to the payment of all costs and charges on account of the trust. ‘ So that there would not be a resulting trust to Reed, for the whole proceeds of the sales. Besides, Reed might enlarge the time for the creditors releasing, if he thought proper, and as it does not appear that he makes any claim to the money to be recovered in this suit, it is not in the power of the defendants to make him a cestui qiie trust against his will. They cannot force him on the record and make him a party to this action against his consent. I am of opinion, therefore, that the defendants were not entitled to the set-off which they claimed.
These are all the objections to the plaintiffs’ recovery, *127 made at the trial of the cause. But in the argument before us, another exception has been brought up, viz. that the deed of assignment from Reed to the plaintiffs was void, because b .... . . ■ . r ■ i . • j not recorded within thirty days from its date, as required by the Act of 24th March, 1818; and therefore the plaintiffs had no property in the goods sold to the defendants, This exception comes too late. The deed was read without any objection on the part of the defendants. The presumption therefore is, that it was recorded according to law. That is a fact, cf which we, sitting as a Court of error, cannot judge. We know not when it was recorded. Although there may be an endorsement on the paper which was given in evidence, mentioning that it was recorded after thirty days, yet that is not conclusive. The plaintiffs might have shewn that the endorsement was erroneous, and that the deed was in fact recorded within thirty days. But this he had no opportunity of doing be'cause the defendants permitted the deed to be read without objection. The time of recording was a fact, which might have been tried in the Court below, if brought into question. But not having been questioned, it is too late to bring it up now before us, who can try no fact. No objection on account of the lateness of the recording having been made, we must presume that none existed.
I am of opinion, on the whole, that there is no error in this record, and therefore the judgment should be affirmed.
Judgment affirmed.